```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

GARY A. LAMOUREUX,                    :
RICHARD A. TERWILLIGER,
WORLD WIDE MEDICAL TECHNOLOGIES,      :
LLC,
ADVANCED CARE MEDICAL, INC.,          :
ADVANCED CARE PHARMACY, INC.,
ADVANCED CARE PHARMACY LLC, and       :
IDEAMATRIX, INC.,
                                      :
     Plaintiffs-Counterclaim
         Defendants,                  :
                                              No. 3:03cv01382(WIG)
         vs.                          :

ANAZAOHEALTH CORP., f/k/a             :
GENESIS PHARMACY SERVICES, INC.,
d/b/a CUSTOM CARE PHARMACY,           :

     Defendant-Counterclaimant.       :
-----------------------------------X
```

## RULING ON PENDING MOTIONS

Pending before the Court are seven motions that have been fully briefed by the parties:

- Motion for Protective Order filed by the Terwilliger Plaintiffs[1] [Doc. No. 321];

- Motion for Joinder in the Motion for Protective Order by the World Wide Plaintiffs[2] [Doc. No. 322];

- Cross-Motion to Compel, Cross-Motion for Sanctions, and

---

[1] Plaintiffs Richard A. Terwilliger and Ideamatrix, Inc., have collectively been referred to throughout this litigation as the "Terwilliger Plaintiffs."

[2] Plaintiffs Gary A. Lamoureux, World Wide Medical Technologies, LLC, Advanced Care Medical, Inc., Advanced Care Pharmacy, Inc., and Advanced Care Pharmacy LLC, have collectively been referred to throughout this litigation as the "World Wide Plaintiffs."

> Cross-Motion for Contempt by Defendant AnazaoHealth [Doc. No. 346];

- Motion for Attorney W. Scott Newbern to Appear *Pro Hac Vice* for the World Wide Plaintiffs [Doc. No. 361];

- Emergency Motion to Vacate the Order [Doc. No. 362] Permitting Counsel to Appear Pro Hac Vice or, in the Alternative, for Modification of the Protective Order, by Defendant AnazaoHealth [Doc. No. 363];

- Motion for Attorney's Fees and for an Order to Show Cause by Defendant AnazaoHealth [Doc. No. 376]; and

- Motion for Reconsideration of the Court's Ruling [Doc. No. 370] on Defendant's Emergency Motion for Protective Order [Doc. No. 340], by the World Wide Plaintiffs [Doc. No. 389].

After due consideration of the moving papers and briefs filed by the parties, the Court hereby renders the following rulings on the motions:

I.  Plaintiffs' Motion for Protective Order and Motion for Joinder [Doc. Nos. 321 & 322] and Defendant's Cross-Motion to Compel, for Sanctions, and for Contempt [Doc. No. 346]

The Terwilliger Plaintiffs, joined by the World Wide Plaintiffs and non-party CarePak, LLC,[3] have filed motions to prevent the disclosure of "confidential, ongoing, unconsummated

---

[3] CarePak, LLC, currently operates as a division of World Wide Medical Technologies, LLC.  It is a party to the NASI litigation but is not a party in this case, although it has been required to produce documents in this litigation in response to a subpoena *duces tecum* from AnazaoHealth.  CarePak represents that apart from the NASI settlement documents, which are the subject of the instant motions, it believes that it has been compliant with the Court's orders regarding production and has made every effort to produce or make available for inspection all documents in its possession, custody or control.  (CarePak's Mem. at 2-3).

settlement communications" in the NASI litigation.[4]  Defendant has responded with a cross-motion to compel the production of these documents, which it maintains are encompassed within the Court's prior discovery orders, as well as other documents that it claims have not been produced.  Additionally, it moves for sanctions for Plaintiffs' and CarePak's alleged failure to comply with the Court's orders.

On December 2, 2008, the Court entered an extensive discovery ruling covering all pending discovery motions.  Although the ruling did discuss at length documents produced in the NASI litigation, it did not address "confidential, ongoing, unconsummated settlement communications."  Thus, to the extent that Defendant asserts that Plaintiffs' motions should be construed as motions for reconsideration or that it is entitled to sanctions for Plaintiffs' withholding of these settlement-related documents, its motion is denied.

In support of its argument for disclosure, Defendant emphasizes that these are not documents between Plaintiffs and unrelated third-parties, but rather are documents authored by and exchanged between the inventors, owners, and purported "exclusive

---

[4] "NASI litigation" refers to two civil actions pending in this Court, World Wide Medical Technologies, LLC, et al. v. North American Scientific, Inc., Case No. 3:05cv1682(RNC), and World Wide Medical Technologies, LLC, et al. v. Terwilliger, et al., Case No. 3:05cv1745(RNC), which have been consolidated under Case No. 3:05cv1682(RNC).

licensees" of the '760 Patent and NASI (which, it claims, is intimately involved in this litigation). These documents, it asserts, include draft licenses and assignments of the '760 Patent and related communications, draft settlement agreements and related communications, and communications regarding AnazaoHealth and this action. "Among other things, these are admissions by the owners, inventors and purported 'exclusive licensees' of the '760 Patent relating to the ownership, scope, validity, enforceability, infringement, and value of the patent." (Def.'s Mem. at 2). In response, Plaintiffs assert that they have produced executed settlement agreements from other cases involving the '760 Patent, but that Defendant's "claimed right to observe the ongoing negotiations from the sideline borders on the absurd, and will surely work to inhibit the parties from engaging in open and frank dialogue." (World Wide Pls.' Reply at 5).

Critical to the issue before the Court is the fact that the NASI litigation is ongoing and has not been resolved through the settlement discussions that have taken place. There is no settlement agreement in place. The documents that are sought relate to unconsummated, ongoing settlement negotiations between the parties to the NASI litigation. "The policy favoring freely-negotiated settlements is one of the strongest in the federal courts, and is enshrined in Fed. R. Evid. 408's exclusionary rule." <u>Vardon Golf Co. v. BBMG Golf Ltd.</u>, 156 F.R.D. 641, 652

(N.D. Ill. 1994)(noting that to allow discovery regarding the negotiations between parties to ongoing litigation could very easily have a chilling effect on the parties' willingness to enter into settlement negotiations).  While Rule 408 is an evidentiary rule that does not foreclose the discovery of settlement-related documents, the courts have been reluctant to order the production of documents relating to ongoing settlement negotiations, absent a showing of substantial need or, at a minimum, a particularized showing of the relevance of such documents.  See, e.g., Primestar 24 Joint Venture v. Echostar Communications Corp., No. 98civ6738, 2000 WL 97680, at *4 (S.D.N.Y. Jan. 28, 2000); United States v. American Society of Composers, Authors, & Publishers, No. CIV 13-95, 1996 WL 157523, at *2 (S.D.N.Y. Apr. 3, 1996).  "The disinclination of the courts to require disclosure of the status of continuing negotiations, absent a substantial showing of need, is consistent with [the policy underlying Rule 408 that settlement is generally desirable and to be encouraged]."  Primestar 24, 2000 WL 97680, at *4 n.5.  In American Society of Composers, the court found of "particular pertinence . . . the distinction between the disclosure of negotiations that have led to a consummated settlement and the disclosure of discussions that are either ongoing or at least have not yet resulted in agreement."  1996 WL 157523, at *3.

This Court approaches Defendant's request for the NASI

settlement communications with the same degree of skepticism as did the court in the American Society of Composers case.  While Defendant vehemently argues the relevance of the documents that are sought,[5] the Court finds that these arguments fall short of establishing substantial need and making the particularized showing necessary to override the strong policy against production of these materials because of the chilling effect that their production could have on the ongoing settlement negotiations.  Accordingly, the Court grants Plaintiffs' requests for a protective order and denies Defendant's motion to compel

---

[5]   Defendant argues that the

> documents at issue - in essence admissions by the patent owners, inventors, and their numerous "exclusive" licensees regarding highly relevant subject matters - are not run of the mill "settlement communications." Rather, they consist of draft licenses and assignments for the '760 Patent and draft settlement agreements that have obvious implications on the issues in this case, and, at least according to the Terwilliger Plaintiffs, discussions of the attempts to further harm AnazaoHealth, which bear directly on AnazaoHealth's defense of patent misuse.

(Def.'s Mem. at 10)(emphasis added).  Defendant also argues that the documents are relevant to the issue of damages, including the calculation of a reasonable royalty and profits.  Defendant's arguments, however, overlook the fact that there is no agreement and, therefore, these draft documents have no relevance to these matters. See Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078-79 (Fed. Cir. 1983) (refusing to consider offers to license a patent to establish a royalty rate, where the offers were offers in compromise made in contemplation of litigation and, therefore, inadmissible under F.R.E. 408).

production of these documents.

The second part of Defendant's motion is a cross-motion for sanctions, pursuant to Fed. R. Civ. P. 37(b), and for contempt, pursuant to Fed. R. Civ. P. 45(e) against Plaintiffs and CarePak for their alleged failure to comply with the Court's previously issued discovery orders.  That motion is denied in all respects.

The Court has reviewed the numerous briefs filed by all sides.  The verbosity and *ad hominem* attacks throughout these briefs have made it particularly difficult for the Court to ascertain precisely what is at issue.  The parties paint absolutely contrasting pictures of the document productions that took place.  The World Wide Plaintiffs maintain that they have fully complied with the Court's Orders.  The Terwilliger Plaintiffs recount their efforts to make all documents available for inspection and copying and represent that all documents in their possession, custody, or control that were the subject of the Court's orders have been produced and/or made available to Defendant.  Likewise, CarePak represents that it has produced or made available for inspection and copying all resposive documents in its possession, custody, or control.  Other than the NASI litigation settlement-related documents discussed above, it does not appear to the Court that there are any categories of documents that have not been produced or been made available for inspection and copying.  Thus, the Court denies Defendant's

Motion to Compel and denies its request for sanctions and its request for a finding of contempt.

II.  The World Wide Plaintiffs' Motion for Reconsideration [Doc. No. 389] of the Court's Ruling [Doc. No. 370] on Defendant's Emergency Motion for Protective Order [Doc. No. 340] and Defendant's Motion for Attorney's Fees and for an Order to Show Cause [Doc. No. 376]

On February 19, 2009, this Court issued a ruling granting Defendant's Emergency Motion for Protective Order and further granting Defendant's request for an award of reasonable costs and attorney's fees.  This ruling was issued only after the Court had previously taken the emergency motion under advisement and ordered the parties to produce simultaneously sworn affidavits to support their respective positions as to the sources of the allegedly confidential information set forth as "Tab A" to Plaintiffs' damage analysis.  The Court's January 21, 2009, ruling stated in clear and unambiguous terms:

> Based on the information provided to the Court, the Court cannot rule on the merits of the motion. Neither side has provided the Court with "Tab A," which easily could have been provided under seal. AnazaoHealth has provided no documents or sworn affidavits to support its claim that the data set forth in Tab A was taken from its "confidential" documents. Likewise, the World Wide Plaintiffs have provided no documentation to support their alleged source of this data.
>
> Accordingly, the Court will take this Motion under advisement for a period of one week to allow both sides to supplement their memoranda with supporting exhibits and sworn affidavits.

In response, the World Wide Plaintiffs produced nothing more than

a one-paragraph joint affidavit from Gary Lamoureux and James Matons restating their previously asserted position that the figures were based on the "World Wide Plaintiffs' competitive analysis of the market and other sources" and that they were not provided access to any of Defendant's "Confidential" documents under the Protective Order.

The World Wide Plaintiffs now seek reconsideration of the Court's Order granting Defendant's motion, claiming that they were deprived of the opportunity to properly respond to the affidavits presented by Defendant.  The Court denies their motion for reconsideration.

As Defendant correctly asserts, the standard for granting a motion for reconsideration is stringent.  <u>Weinstock v. Wilk</u>, No. 3:02cv1326(PCD), 2004 WL 367618, at *1 (D. Conn. Feb. 25, 2004). A motion for reconsideration should not be used as a vehicle for giving a dissatisfied party "a second bite at the apple," <u>id.</u>, which is precisely what Plaintiffs are seeking through the instant motion.

The Court's order was abundantly clear as to what information the Court was seeking, and Plaintiffs' response wholly failed to comply with that order.  Indeed, it now appears that the damage figures were not derived from Mr. Lamoureux's and Mr. Matons' competitive analysis of the market, but instead were derived by Plaintiffs' counsel from some figures used in prior

litigation and "unwittingly incorporated into the template for the damages analysis in this case." (Pls.' Reply Mem. at 3).

Moreover, as the Court noted and Plaintiffs now concede, these figures do not represent sales of infringing products but represent sales of all brachytherapy sales and "thus were not directly relevant to the damages in this case." Id. Given the lack of relevance of these figures, the Court is hard-pressed to understand Plaintiffs' vehement objection to having these figures designated as "Confidential."

Even when the Court accepts Plaintiffs' representations that these figures were not derived from improperly disclosed discovery materials produced in this litigation, it was only through Defendant's filing an emergency motion for protective order that the origin of these figure was finally fleshed out. It was Plaintiffs who provided these figures to Defendant, and it was Plaintiffs who repeatedly refused to provide any meaningful documentation as to the source of these figures. Under these circumstances, an award of fees and costs to Defendant in having to bring this motion is appropriate.

In that regard, Defendant has moved for an award of attorney's fees and costs in the amount of $12,348.57 and for an order to show cause why Plaintiffs should not be held in contempt for failing to advise defense counsel to whom the information at issue has been disseminated, as required by the Court's February

19, 2009 Order.  With respect to the request for an order to show cause, Plaintiffs respond that they have provided that information to defense counsel.  The Court accepts that representation and denies the motion for an order to show cause.

With respect to Defendant's request for fees and costs in the amount of $12,348.57, the Court grants this motion but for an amount substantially less than what has been sought.  The Court has carefully reviewed the fee affidavit of Attorney Patrick Fahey and agrees that the hourly rates sought are reasonable: $350/hour for Attorney Fahey, a partner with Shipman & Goowin LLP, in Hartford, Connecticut, with sixteen years of legal experience; $290/hour for Attorney Lee Duval; and $260/hour for Attorney Susan Murphy.[6]  However, the Court finds the number of hours sought to be excessive for the filing of a motion for protective order and a motion for fees.  Attorney Fahey seeks compensation for 30.8 hours, Attorney Murphy for 7.4 hours, and Attorney Duval for 0.2 hours.[7]  The Court reduces this request by 50% and awards Defendant fees in the amount of $6,061.95, plus costs of $197.12, for a total of $6,259.07.

---

[6] The Court notes that counsel have applied a 5% discount to their fees.  These rates do not take this discount into account.

[7] The Court's calculations yield a slightly different figure than that sought by defense counsel.  Applying the rates set forth above to the hours reported results in a total fee of $12,762.00.  With the 5% discount, the total fee sought should have been $12,123.90, still markedly excessive.

III. Motion for Attorney W. Scott Newbern to Appear *Pro Hac Vice* for the World Wide Plaintiffs [Doc. No. 361] and Defendant's Emergency Motion to Vacate the Order on the Motion to Appear or, in the Alternative, for a Modification of the Protective Order [Doc. No. 363]

On February 10, 2009, Attorney Jeffrey Tinley, Counsel of Record for the World Wide Plaintiffs, filed a motion to permit Attorney W. Scott Newbern to appear *pro hac vice* on behalf of the World Wide Plaintiffs. The motion met all of the filing requirements of the Local Rules of Civil Procedure of this District, see D. Conn. L. Civ. R. 83.1(d), and the Clerk appropriately and promptly granted the motion. That same day, Defendant filed an Emergency Motion to Vacate this order, which the Court granted so as to preserve the status quo but without prejudice to reconsideration after the parties had an opportunity to fully brief the issues presented by the motion. Alternatively, Defendant sought a modification of the Protective Order to prevent Attorney Newbern from having access to AnazaoHealth's confidential discovery material, which is the real issue at the heart of this controversy.

The primary argument raised by Defendant is that Attorney Newbern is an officer of several of the World Wide Plaintiffs and former in-house general counsel to the World Wide Plaintiffs[8] and that his appearance as counsel of record in this litigation would

---

[8] According to Plaintiffs, he has not held that position since September 2008.

12

provide him with access to "Confidential" information and documents, to which he would not otherwise have access. Because of his personal stake in the financial performance of these companies and in the outcome of this litigation, Defendant argues that it is inappropriate for him to appear as counsel in this matter. Defendant further points out that, based on Plaintiffs' most recent disclosures concerning the source of their damages figures (see Discussion in Section II, supra), Attorney Newbern apparently violated a similar protective order entered in the Florida litigation filed by the World Wide Plaintiffs against AnazaoHealth and others, in which he was counsel of record. Defendant suggests that this demonstrated disregard for the integrity of the judicial process and Defendant's confidential information should be grounds for denying his admission *pro hac vice*.

Plaintiffs assert that Mr. Newbern is being added as counsel of record in order to keep this matter moving forward, because of his familiarity with the issues in dispute and because of the withdrawal of one of their other lead attorneys. With respect to Defendant's request in the alternative that the Protective Order be modified, Plaintiffs take no position and leave this to the Court's discretion.

Whether Attorney Newbern did or did not violate a protective order entered in the Florida litigation is not a matter over

which this Court has jurisdiction.  Its only relevance to his admission *pro hac vice* would be if this alleged infraction had led to his disbarment or disciplinary action, which is not the case.  See Sedona Corp. v. Ladenburg Thalmann & Co., No. 03Civ.3120, 2003 WL 22339357, at *3 (S.D.N.Y. Oct. 14, 2003) (refusing to deny *pro hac vice* admission to out-of-state attorneys despite discovery abuses in other cases, where the presiding judges did not impose or recommend disciplinary action).

The Court notes that since the filing of the motion for Attorney Newbern to appear *pro hac vice*, one additional attorney has entered an appearance on behalf of the World Wide Plaintiffs, which to some degree moots one of Plaintiffs' arguments in favor of Attorney Newbern's admission.  Nevertheless, a litigant generally has a right to choose its own counsel, which right should not be lightly interfered with, so long as the Court's requirements for admission have been met.  See Sedona Corp., 2003 WL 22339357, at *3.  Attorney Newbern's application meets all of the Court's requirements for admission *pro hac vice*, and Defendant has failed to set forth any ground that would warrant the Court's denial of that motion.  Accordingly, the Court grants the World Wide Plaintiffs' motion for W. Scott Newbern to appear *pro hac vice*.

As noted above, alternatively, Defendant has moved for a

modification of the Protective Order to prevent Attorney Newbern's access to Defendant's "Confidential" information. Plaintiffs took no position on this request.  The Court appreciates Defendant's concern over disclosure of its "Confidential" information to an officer of its direct competitor.  Since Plaintiffs have not opposed this request, the Court will grant Defendant's Motion for Modification of the Protective Order to preclude W. Scott Newbern's access to any documents or information designated by Defendant as "Confidential" under the terms of the Protective Order.  Thus, paragraph 5(a) of the Protective Order shall be modified to read as follows: "(a) The parties' attorneys of record in this Action, <u>except that any Discovery Material designated by Defendant as "CONFIDENTIAL" shall not be disclosed to W. Scott Newbern, counsel of record for the World Wide Plaintiffs</u>."  (Protective Order at 3, ¶ 5(a))(underlining showing the amendment to the original language).

Conclusion

     Accordingly, the Court GRANTS the Terwilliger Plaintiffs' Motion for Protective Order [Doc. No. 321]; the Court GRANTS the World Wide Plaintiffs' Motion for Joinder in the Motion for Protective Order [Doc. No. 322]; the Court DENIES Defendant's Cross-Motion to Compel and Cross-Motion for Sanctions and Motion for Contempt [Doc. No. 346]; the Court GRANTS the Motion for

Attorney W. Scott Newbern to Appear *Pro Hac Vice* for the World Wide Plaintiffs [Doc. No. 361]; the Court DENIES the Defendant's Emergency Motion for Protective Order [Doc. No. 363] but GRANTS the Defendant's Motion, in the Alternative, for Modification of the Protective Order [Doc. No. 363]; the Court GRANTS in part Defendant's Motion for Attorney's Fees and Costs in the amount of $6,259.07; the Court DENIES the World Wide Plaintiffs' Motion for Reconsideration of the Ruling on Defendant's Emergency Motion for Protective Order [Doc. No. 389].

   SO ORDERED, this   26th   day of March, 2009, at Bridgeport, Connecticut.


                              /s/ *William I. Garfinkel*
                              WILLIAM I. GARFINKEL
                              United States Magistrate Judge