```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

GARY A. LAMOUREUX,                     :
RICHARD A. TERWILLIGER,
WORLD WIDE MEDICAL TECHNOLOGIES,       :
LLC,
ADVANCED CARE MEDICAL, INC.,           :
ADVANCED CARE PHARMACY, INC.,
ADVANCED CARE PHARMACY LLC, and        :
IDEAMATRIX, INC.,
                                       :
     Plaintiffs-Counterclaim
          Defendants,                  :
                                              No. 3:03cv01382(WIG)
          vs.                          :

ANAZAOHEALTH CORP., f/k/a              :
GENESIS PHARMACY SERVICES, INC.,
d/b/a CUSTOM CARE PHARMACY,            :

     Defendant-Counterclaimant.        :
-----------------------------------X
```

<u>RULING ON PENDING MOTIONS</u>

Pending before the Court are two motions filed by Defendant AnazaoHealth Corporation relating to the World Wide Plaintiffs'[1] designation of expert witnesses and their disclosure of the expert witnesses' reports.  The first motion seeks to compel production of an expert report from James Matons or alternatively to preclude him from testifying [Doc. # 377].  The second seeks to preclude Plaintiff Gary A. Lamoureux from testifying as an expert witness or alternatively to compel production of an expert

---

[1]  Plaintiffs Gary A. Lamoureux, World Wide Medical Technologies, LLC, Advanced Care Medical, Inc., Advanced Care Pharmacy, Inc., and Advanced Care Pharmacy LLC, have collectively been referred to throughout this litigation as the "World Wide Plaintiffs."

report from him [Doc. # 379].

James Matons

In their December 2008 disclosures of experts, the World Wide Plaintiffs designated James Matons as an expert witness on both liability and damages issues.  They did not, however, provide an expert report from Mr. Matons at that time, taking the position that a written report was not required under Fed. R. Civ. P. 26(a)(2)(A) because Mr. Matons was not a witness retained or specially employed to provide expert testimony in this case and was not someone whose duties as their employee regularly involved giving expert testimony.  Eventually, after Defendant filed its motion to compel, Plaintiffs produced an expert report for Mr. Matons on March 13, 2009, the last day for conducting expert-related discovery.  Plaintiffs now argue that Defendant's motion to compel is moot.  Defendant concedes that the provision of Mr. Matons' expert report resolves its motion to compel, but it nevertheless urges the Court to preclude him from testifying because of the untimely disclosure.

Had Plaintiffs not voluntarily provided Defendant with an expert report from Mr. Matons, the Court would have ordered them to do so.  See Fed. R. Civ. P. 26(a)(2)(B) (which provides "[u]nless otherwise . . . ordered by the court," thus clearly contemplating that the court may order the provision of an expert report even from those individuals exempt from the written report

requirements).   Mr. Matons has been offered as an expert witness on virtually every aspect of this case, yet he has never been identified by Plaintiffs as a fact witness.  He is not currently employed by any of the Plaintiffs, but he is employed by Biocompatibles, Inc., a company that recently acquired certain assets of one or more of the World Wide Plaintiffs. Additionally, he previously served as President of Advanced Care Medical, Inc., and was a consultant to World Wide Medical Technologies LLC and Advanced Care Pharmacy LLC.  Clearly this is a situation where an expert report would serve the purpose of the Federal Rules in promoting full pre-trial disclosure of expert information.  See Advisory Committee Notes to Fed. R. Civ. P. 26, 1993 Amendments ¶ (a)(2), at 160-61 (2009 ed.); Day v. Consolidated Rail Corp., No. 95 Civ. 968, 1996 WL 257654, at *2 (S.D.N.Y. May 15, 1996)("The logic of defendant's [in this case plaintiffs'] position would be to create a category of expert trial witnesses for whom no written disclosure is required - a result plainly not contemplated by the drafters of the current version of the rules and not justified by any articulable policy"); McCullough v. Hartford Life & Accident Ins. Co., 223 F.R.D. 26, 28 (D. Conn. 2004)(requiring defendant's employees, designated as expert witnesses, to provide expert reports where their testimony would involve substantially more than a recital of facts about what they may have observed on the job.  "These

witnesses will develop opinions specifically for trial, the basis

of which the [plaintiff] is entitled to be informed about.

Furthermore, to find otherwise would risk encouraging corporate

defendants to attempt to evade the report requirement by

designating its own employees first as fact witnesses and then

asking them to offer some related expert opinion.").

Plaintiffs have now provided an expert report from Mr.

Matons, albeit belatedly.  The Court will not preclude Mr. Matons

from testifying based on the untimeliness of his report,[2] but the

Court will allow Defendant an additional 30 days from the date of

this ruling to depose him as an expert witness and/or to

designate a rebuttal expert.

Gary A. Lamoureux

As with Mr. Matons, Plaintiffs listed Mr. Lamoureux as a

liability and damages expert in their December 2008 expert

witness disclosures, but did not initially provide an expert

report again in reliance on Fed. R. Civ. P. 26(a)(2)(B).  On

March 12, 2009, Plaintiffs provided Defendant with an expert

report of Mr. Lamoureux concerning damages.  On March 18, 2009,

after the close of expert discovery, Plaintiffs served an

---

[2]  Defendant has reserved its right to challenge Plaintiffs'
compliance with the requirements of Fed. R. Civ. P. 26 and the
admissibility of Mr. Matons' opinions after he has been deposed.
The Court expresses no opinion at this time as to whether Mr.
Matons will qualify as an expert or on which subjects he will be
able to offer an expert opinion.  See Discussion, infra, at 9-11.

"addendum" expert report of Mr. Lamoureux concerning patent
infringement.

Defendant concedes that with the production of Mr.
Lamoureux's expert reports, its motion to compel is now moot.
However, Defendant vehemently argues that the Court should
preclude his testifying as an expert based on his lack of
qualifications and the contradictions between his earlier
30(b)(6) deposition testimony and the current expert reports.

Plaintiffs respond that Defendant has taken Mr. Lamoureux's
deposition testimony out of context and point out that his
deposition was taken before he had been disclosed as an expert
and at a time when he had not fully considered and analyzed the
opinions expressed in his report from the standpoint of an expert
witness.  That may well be, but in producing Mr. Lamoureux for a
30(b)(6) deposition, Plaintiffs had an affirmative duty to make
sure that he would be able to give complete, knowledgeable, and
binding answers on behalf of the corporation.  See Reilly v.
NatWest Markets Group, Inc., 181 F.3d 253, 268 (2d Cir. 1999)
("To satisfy Rule 30(b)(6), the corporate deponent has an
affirmative duty to make available such number of persons as will
be able to give complete, knowledgeable and binding answers on
its behalf.") (internal citations and quotation marks omitted);
Honda Lease Trust v. Middlesex Mut. Assurance Co., No.
3:05cv1426, 2008 WL 3285242, at *3 (D. Conn. Aug. 7, 2008)

(holding that a deponent under Rule 30(b)(6) has an affirmative obligation to educate himself as to the matters regarding the corporation, including all matters that are known or reasonably available to the corporation); Newport Electronics, Inc. v. Newport Corp., 157 F. Supp. 2d 202, 220 (D. Conn. 2001) (holding that, where a corporation has received notice of the topics for a 30(b)(6) deposition, the designated witness is not at liberty to delay reviewing information on those topics until after the deposition and thereafter submitting an affidavit which contradicts his deposition testimony regarding his lack of knowledge on various topics).

Certainly Mr. Lamoureux can testify in this case as a fact witness about matters of which he has personal knowledge.  FRE 602.  He is a co-inventor on the '760 Patent at issue.  He was or is the president and CEO of all of the World Wide Plaintiffs.  To the extent that a proper foundation is laid, he can testify about brachytherapy, as to the development of the product, the market for brachytherapy products, pricing, his companies' revenues, sales, the impact of Defendant's competition and alleged infringement on his companies' brachytherapy business, their diminution in value, and his companies' lost profits.[3]  See Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 265 (2d

---

[3]  The Court emphasizes that these topics are just examples and is in no way intended to preclude his testimony on other subjects of which he has personal knowledge.

Cir. 1995) (holding that, under FRE 701, a company president could project lost profits where the projections were based on evidence of decreased sales, of which he had personal knowledge); Lightning Lube, Inc. v. Witco Corp., 4 F.2d 1153, 1174-75 (3d Cir. 1993) (holding that the owner of a company was not required to qualify as an expert to offer opinion testimony concerning his company's lost profits, provided that his opinion was well-founded on personal knowledge); Saye v. Old Hill Partners, Inc., 478 F. Supp. 2d 248, 272 (D. Conn. 2007) (allowing a company president, under FRE 701, to testify to corporate losses of which he had personal knowledge).  As a lay witness, however, his testimony in the form of opinions or inferences will be limited to those which are (a) rationally based on his own perceptions, (b) helpful to a clear understanding of his testimony or to the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.  FRE 701.

But, with respect to his ability to testify as an expert on damages under Rule 702, Mr. Lamoureux made very clear in his 30(b)(6) deposition that he is not an economist and he is not an expert on damages models.  His prior testimony was unequivocal in that regard.

> Q.  Can you tell me what damages you're claiming with regard to the patent infringement claim [at page 12 of the complaint]?

A.    Well, I haven't read or seen a damage model
produced by an economist which I think is part of the
process we had done in our previous litigation. . . .

(Lamoureux Depo. at 925).

Q.    Now, in terms of lost profits and the revenues,
would those damages be your damages, World Wide's
damages or Advanced Care Pharmacy's damages?

A.    I think it could be a combination of damages to my
collective entities.  I think there might also be a
possibility of an economist looking at due to their
dissension . . . .

(Id. at 927).

Q.    And in assessing the diminution in value of your
companies declining sales over the years, you would
have to take into account those damages in assessing
the explanation for your lost profits or lost revenues,
correct?

PLAINTIFFS' ATTORNEY:  I'm just going to object to the
extent this calls for an expert opinion on damages.
Subject to that objection, you can answer.

A.    Yeah, I mean, I think as I stated when I tried to
give you my view on this question that we hadn't hired
an economist, a damage model hadn't been constructed.
I know that some work has been done internally by the
attorneys to determine the extent of a damage model,
but I think, you know, an independent economist will be
made aware of all the factors that would effect the
business losses and I think as Attorney Interlandi
said, that's the qualification that would come up with
this number.  I'm just giving you my gut feeling.

(Id. at 930).

Q.    I think you mentioned when you were talking
generally about damages about the notion of lost
profits; is that right?

A.    Yeah.  There are, you know, in discussing with my
attorneys the, you know, the damages, there were a
number of things that were described to me that are
typically utilized in a traditional formulation of

8

patent infringement, and that was a concept that was mentioned, but I don't recall exactly.

Again, I'm not a damages model expert so it was just something that I had heard, and if it is part of the calculation, then a person who is skilled in the damage model preparation, I'm assuming will employ that.

(Id. at 933).

Q.   Is that what you would be seeking [referring to a royalty payment]?

A.   I would be seeking the maximum amount I could get frankly.  So it might be this plus other damages.  I don't know frankly.  Again, I'm not a damages expert, but somebody will be paid to make that determination.

(Id. at 935).

Q.   Do you understand that your measure of damages under the patent claim, Count 1, might be a royalty measure of damages?

A.   I don't — as I said, I don't really know the correct mechanism that would be employed by a person whose expertise is to create these damage models.

(Id.).

Q.   Now, do you have any conception of what the damages you're seeking under Count 3 are?

A.   No, I don't.

(Id. at 937).

Q.   Do you have any conception of what the damages you're seeking are under Count 5?

A.   No.

Q.   Would they be any different from the damages we have been discussing so far today?

A.   I don't know. Sorry.

        Q.    So they may be?

        A.    I'm not an expert on what – which counts, what type of damage model, if it's done as a total, if it's done conceptually in layers, if it's done by count.  I have not created any type of damage model for this type of situation.  So I have no idea.

(Id. at 937-38).

        Q.   And for Count 6, the unfair trade practices claim, that's a claim pursuant to which you're seeking damages in this case, right?

        A.    Yes.

        Q.   Do you have any conception of what damages you're seeking pursuant to that claim are?

        A.    No.

(Id. at 938).

Yet, despite this unequivocal testimony, Plaintiffs have now proffered Mr. Lamoureux as an expert on damages and have provided a 14-page expert report with a "detailed analysis", including "activities and elements reflected in the damages model," "lost profits analysis," "lost contribution damage calculations," "royalty from January 2006 to present," and "lost valuation." Attached to the report is an even more detailed six-page damages summary, to which Mr. Lamoureux presumably intends to testify.

The admission of expert testimony is governed by Rule 702, FRE, and the principles announced by the Supreme Court in Daubert v. Merrell Dow Phamaceutical, Inc., 509 U.S. 579 (1993).  Rule 702 provides:

        If scientific, technical, or other

> specialized knowledge will assist the trier
> of fact to understand the evidence or to
> determine a fact in issue, a witness
> qualified as an expert by knowledge, skill,
> experience, training, or education, may
> testify thereto in the form of an opinion or
> otherwise.

The Supreme Court in Daubert held that the trial judge, in

considering the admissibility of expert evidence under Rule 702,

must ensure that the evidence is both reliable and relevant.  509

U.S. at 597; see Lamela v. City of New York, 560 F. Supp. 2d 214,

224 (E.D.N.Y. 2008).  In this regard, the trial court functions

as a "gatekeeper."  Daubert, 509 U.S. at 597; see Celebrity

Cruises, Inc. v. Essef Corp., 434 F. Supp. 2d 169, 175 (S.D.N.Y.

2006).  In that gatekeeper role, the Court must first determine

whether the expert has the requisite qualification to testify

competently regarding the matters he intends to address.  Zaremba

v. General Motors Corp., 360 F.3d 355, 360 (2d Cir. 2004).  "If

an expert lacks the requisite qualifications, any analysis of the

reliability of their methods by the court is superfluous."

Lamela, 560 F. Supp. 2d at 224 (internal quotation marks and

citations omitted).  The World Wide Plaintiffs, as the party

offering the expert testimony of Mr. Lamoureux, bear the burden

of establishing the admissibility of his testimony by a

preponderance of the evidence.  Id.  Whether an expert is

qualified depends on whether he has "such knowledge or experience

in [his] field or calling as to make it appear that his opinion

or inference will probably aid the trier in his search for the truth."  United States v. Hicks, 389 F.2d 514, 524 (5th Cir. 2004) (quoting United States v. Boureois, 950 F.2d 980, 987 (5th Cir. 1992)), cert. denied, 546 U.S. 1089 (2006).  An expert's qualifications may be based on any combination of "knowledge, skill, experience, training, or education."  FRE 702; Hendrix v. Evenflo Co., Inc., 255 F.R.D. 568, 578 (N. D. Fla. 2009). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."  Carroll v. Otis Elevator Co., 896 F.2d 210, 212 (7th Cir. 1990).

Applying these principles, in Kozak v. Medtronic, Inc., 512 F. Supp. 2d 913, 918 (S.D. Tex. 2007), the court found that the plaintiff, an orthopedic surgeon with extensive training in biomedical engineering with several medical inventions to his credit, was not qualified to construct a future damages model for calculating damages.

> Plaintiff has made no showing of expertise in calculating future damages or royalties based on projected future sales and market adoption/penetration rates of spinal products such as anterior lumbar plates. . . . Moreover, there is no showing that his training to become an orthopedic surgeon and his study of biomedical engineering, or his becoming an inventor, qualifies him to formulate a complex damages model in this case.  Plaintiff points to no specialized knowledge, education, training, or

> experience, not even to attendance at a
> single technical course on the subject of
> economics or damages models, that would
> prepare him to make economic calculations of
> this nature. . . .  Accordingly, the Court is
> unable to find from a preponderance of the
> evidence that Plaintiff is qualified in
> accordance with Rule 702 by specialized
> knowledge, education, training, or experience
> to render an admissible expert opinion on the
> calculation of future damages for the
> misappropriation of trade secrets.

512 F. Supp. 2d at 918-19 (emphasis in original).

Similarly, in Lifewise Master Funding v. Telebank, 374 F.3d 917, 918-29 (10th Cir. 2004), the court upheld the district court's exclusion of the testimony of the plaintiff's chief executive officer ("CEO") as an expert witness on a damages model.  The court held that for the CEO to qualify as an expert, he was required to possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."  374 F.3d at 928 (quoting Graham v. Wyeth Labs., 906 F.2d 1399, 1408 (10th Cir. 1990)). "Whether a witness can parrot the results of a model does not mean that he is qualified to explain how the model works or to opine on the statistical validity or interpretation of the results."  Id. (emphasis in original).  The court then determined that the CEO was not an expert in damages analysis or in any of the techniques used to create the damages model.  "He admitted that he had never used the methods used to create the . . .

13

damages model; he even confessed that 'I am not a [damages]

modeler'" id., and that he was not an accountant, and was not an

expert in regression analysis.   The court noted his lack of

education, training, and experience in finance and damages

analyses, and concluded that the district court did not err in

ruling that the CEO could not testify as an expert regarding such

a complex subject matter as plaintiff's damages model.  See also

State Contracting & Eng'g Corp. v. Condotte America, Inc., 346

F.3d 1057, 1073 (Fed. Cir. 2003) (upholding the district court's

barring plaintiff's expert from testifying as to a reasonable

royalty where the expert admitted that he had no experience in

placing a value on a patent and did not have any knowledge

regarding reasonable royalties for construction-related patents);

Masterson Marketing, Inc. v. KSL Recreation Corp., 495 F. Supp.

2d 1044, 1050 (S.D. Cal. 2007) (finding that the plaintiff was

not qualified to testify as his own expert on damages or profits

attributable to the alleged copyright infringement); Gallagher v.

Southern Source Packaging, LLC, 568 F. Supp. 2d 624, 634

(E.D.N.C. 2008) (finding the expert report of plaintiff's

software consultant inadmissible on plaintiff's losses because he

was not an accountant or economist, he had no knowledge

concerning plaintiff's customers, products, or production costs,

he had never served as an expert witness concerning lost

revenues, and "most remarkably, [he] repeatedly testified in his

deposition that he does not have an opinion on [plaintiff's]
losses").

In this case, Mr. Lamoureux's proffered expert report on
damages indicates that he has a B.S. degree in Business
Administration from Post University and an M.B.A. in Finance and
International Business from the University of Connecticut, that
he completed a one-week entrepreneurial course at Babson College
and a Dale Carnegie sales training course, and that he was
formerly a Certified Management Accountant.  He has extensive
work experience in the medical technology field and has designed
a number of medical devices and is the inventor or co-inventor on
seventeen patents.  However, as his testimony reflects, he is not
an economist and is not an expert on damages models.  Plaintiffs
have not carried their burden of establishing his qualification
to testify as an expert witness on damages.  See Hernandez v
Cavaliere Custom Homes, Inc., No. 3:04CV01931, 2007 WL 2874757,
at *1 (D. Conn. Sept. 28, 2007).  The Court therefore grants
Defendant's motion to preclude him from testifying as an expert
witness on damages.

The final issue, and one which has only been superficially
addressed by the parties, is whether Mr. Lamoureux can testify as
an expert witness on infringement issues.  In support of its
argument that Mr. Lamoureux is not qualified to testify about
infringement, Defendant relies primarily on the contradictions

between his deposition testimony and his expert report.
Plaintiffs have not responded to this argument.

Mr. Lamoureux's expert report states his opinion that the
elements of Claims 1-3, 9-10, 16-18, and 21 of the '760 Patent
are present in Defendant's Loaded Brachytherapy Needle Assembly
and that inclusion of these elements is grounds to claim that the
device infringes the '760 Patent.  In his earlier deposition, Mr.
Lamoureux was more equivocal as to whether Defendant's product
infringed certain of the claims, but this was in part because he
stated that he had not recently seen Defendant's product.
(Lamoureux Depo. at 214-15).  Regardless, the fact that Mr.
Lamoureux's testimony in his deposition may contradict his expert
report goes to the weight that it should be accorded and not to
whether he should be precluded from testifying as an expert.  See
Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 485 F. Supp. 2d 310,
320 (S.D.N.Y. 2007), aff'd in part, rev'd in part on other
grounds, and remanded by 288 Fed. Appx. 697 (Fed. Cir. 2008).

The Court finds that Mr. Lamoureux, as the co-inventor of
the '760 Patent and an inventor and co-inventor on numerous other
patents related to brachytherapy, and who has worked in this
industry for many years, including over 12 years as president and
CEO of the various World Wide Plaintiffs, is qualified to testify
as an expert on patent infringement issues.  Under Rule 704, FRE,
an expert witness is permitted to testify in the form of an

16

opinion as to an "ultimate issue of fact."  See Donnelly Corp. v. Gentex Corp., 918 F. Supp. 1126, 1137 (W.D. Mich. 1996).  Thus, the courts have held that expert testimony on the ultimate factual issue of infringement is permissible in patent cases. See Snellman v. Ricoh Co., 862 F.2d 283, 287 (Fed. Cir. 1988), cert. denied, 491 U.S. 910 (1989); Symbol Technologies, Inc. v. Opticon, Inc., 935 F.2d 1569, 1575 (Fed. Cir. 1991).

Therefore, the Court denies Defendant's motion to preclude Gary A. Lamoureux from testifying as an expert on the issue of infringement.

## Conclusion

Accordingly, for the reasons set forth above the Court finds that Defendant's motion to compel [Doc. # 377] Plaintiffs to produce an expert report from James Matons is moot.  The Court denies Defendant's motion to preclude James Matons from testifying as an expert based on the untimeliness of his expert report [Doc. # 377], but grants Defendant an additional 30 days to depose him and/or to designate a rebuttal expert.

The Court grants Defendant's motion to preclude Gary A. Lamoureux from testifying as an expert witness on damages, but denies the motion as to his ability to testify as an expert witness on infringement issues [Doc. # 379].  The Court finds that Defendant's motion to compel Plaintiffs to produce an expert report from Gary A. Lamoureux is moot.

SO ORDERED, this ___30th___ day of April, 2009, at

Bridgeport, Connecticut.


                              ___/s/ *William I. Garfinkel*___
                              WILLIAM I. GARFINKEL
                              United States Magistrate Judge